UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN YOBANI ENAMORADO,<br><br>    Plaintiff,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>    Defendants. | Case No. 25-cv-04072-NW<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 18 |

    Plaintiff Edwin Yobani Enamorado fled from Honduras to the United States with his wife and their minor children.[1] The United States granted asylum to his wife and their children, and in 2022 an immigration judge determined Enamorado could not be removed to Honduras. Since then the family has lived in California. After years without being required to report to Immigration and Customs Enforcement ("ICE"), ICE sent Enamorado's bond obligator a notice demanding that he present for an "interview" at 8:00 a.m. on May 14, 2025, at the ICE San Francisco Offices. Enamorado feared that ICE would initiate removal proceedings and send him to a country other than Honduras without an opportunity to raise a fear-based claim as to that country, and that he would be detained in the interim.

    Enamorado seeks a preliminary injunction enjoining the Government from arresting, detaining, and removing him to a third country without notice and an opportunity to present a fear-

---

[1] The facts are drawn from the amended complaint, motion for a temporary restraining order ("TRO"), and declarations filed in support of the motion for a TRO, and have not been rebutted by the Government. First Amended Compl., ECF No. 16 ("FAC"); Amended Mot. for TRO, ECF No. 18 ("Mot."); Decl. of Heliodoro Moreno, Jr. I.S.O. FAC, ECF No. 18-2; *see also* Opp'n to Mot., ECF No. 21.

based claim.² Mot. at 2. The Court considered the parties' briefs, the relevant law, and the arguments offered by counsel at the October 22, 2025 hearing, and GRANTS Plaintiff's motion.

I.   BACKGROUND

Mr. Enamorado is a forty-two-year-old man who was born in Honduras. When he was eleven, he was forced to join the MS-13 gang. In 1999, at the age of sixteen, he feared for his life and fled to the United States. An immigration judge initially granted Enamorado asylum, but the Government appealed. Although the Board of Immigration Appeals reversed his asylum determination and ordered Enamorado removed ("2003 Removal Order"), that removal did not happen right away. While he was waiting, he was convicted of non-violent offenses, including possession of marijuana and a false identification. In August 2005, Enamorado was transferred to ICE custody and deported to Honduras.

Shortly after his return to Honduras, gang members severely beat and stabbed Enamorado as retaliation for him having left the gang. He fled to another region of Honduras and lived in hiding. There he met his wife, Yesmin Herrara Cruz, who already had two children. Cruz and Enamorado had two more children in 2010 and 2014.

In 2014 and again in 2016, the gang members discovered Enamorado's location and threatened to kill him and his family. Cruz and Enamorado fled with their children to different locations within Honduras. Because Enamorado was "[t]errified that he and his family would be killed" by gang members, on December 13, 2018, they fled Honduras and entered the United States. The family was briefly kept and then released from immigration detention. Enamorado, however, was not released. ICE reinstated Enamorado's 2003 Removal Order, separated him from his young family and held him for over six months in poor conditions in the Florence Detention Center in Arizona.

During Enamorado's detention, on January 15, 2019, an asylum officer determined that he had a reasonable fear of persecution or torture in Honduras and referred Enamorado to an immigration judge to apply for withholding of removal. On July 8, 2019, an immigration judge

---

² The motion was originally filed as a motion for a TRO, ECF No.18, but was converted to a motion for preliminary injunction with the parties' consent during the October 22, 2025 hearing.

1    found that Enamorado was neither a danger to the community nor a flight risk and granted
2    Enamorado's release from custody on an $8,000 bond.
3        On April 12, 2022, an immigration judge granted Enamorado withholding of removal to
4    Honduras under 8 U.S.C. § 1231(b)(3). After that Enamorado was no longer required to report to
5    ICE.
6        Enamorado now lives in Martinez, California, with his family. He has had no touches with
7    the criminal justice system in twenty years. He has worked diligently as the sole provider for his
8    family by running a landscaping business. On August 23, 2022, an immigration judge in San
9    Francisco granted asylum to Enamorado's wife and children, and they became lawful permanent
10   residents of the United States on September 17, 2024.
11       On April 10, 2025, ICE sent a letter to Enamorado's bond obligor demanding that he report
12   to ICE's offices in San Francisco, California on May 14, 2025, at 8:00 a.m. for an "interview."
13   Mot. at 3. Enamorado explained that he was "terrified" that ICE would detain him during this
14   "interview" and try to remove him to a third country consistent with the Government's "directive,"
15   which had been reported in the news and evidenced by "the arrest and detention of at least thirty
16   other individuals" similarly situated to Mr. Enamorado. *Id*. at 21; *see also* Decl. of Heliodoro
17   Moreno, Jr., ¶ 14, Exs. A, C, D, E, M, ECF No. 2-1 (declarations of lawyers representing clients
18   who have been detained, and the related DHS internal directive).

19   **A.     Procedural History**

20       On May 12, 2025, Enamorado brought suit and filed a motion for a TRO against Polly
21   Kaiser, in her official capacity as Acting San Francisco Field Office Director of U.S. ICE, Todd
22   M. Lyons, in his official capacity as Acting Director of ICE, Kristi Noem, in her official capacity
23   as the Secretary of the U.S. Department of Homeland Security, and Pamela Bondi, in her official
24   capacity as Attorney General of the United States (collectively, "Defendants" or the
25   "Government"). ECF Nos. 2, 3. The same day, the Court granted Enamorado's motion for a TRO
26   to preserve the status quo pending further briefing and a hearing on this matter. ECF No. 8.
27   Among other relief, the Court enjoined Defendants from re-arresting and re-detaining Plaintiff on
28   grounds related to his immigration status prior to a further order of this Court or prior to (including

3

1    during, or after) the hearing date. Over the next several months the parties stipulated to extend the
2    briefing schedule and continue the hearing date, while maintaining the terms of the Court's order,
3    which the Court granted. ECF Nos. 11-14.

4    After Plaintiff filed his first complaint, Defendants rescheduled Enamorado's "interview"
5    with ICE to May 28, 2025. On May 28, 2025, Plaintiff's "bond was cancelled and he was placed
6    on an order of supervision." Mot. at 3. Enamorado's next date to report to ICE's offices is May
7    27, 2026.

8    On July 3, 2025, Plaintiff filed a motion for leave to file an amended habeas petition and
9    complaint (Plaintiff also filed the proposed amended pleading). ECF Nos. 16-17. Enamorado also
10   filed a new motion for a TRO, to address the new events related to his case as well as to address
11   developments in the law since the United States Supreme Court's June 23, 2025 decision in *Dep't
12   of Homeland Sec. v. D.V.D.* 145 S. Ct. 2153 (2025); ECF No. 18.

13   On July 16, 2025, the Court held a hearing on Plaintiff's then-pending motions. During
14   the hearing, Defendants agreed that Enamorado poses no danger to the community and that he is
15   not a flight risk. Defendants indicated that while they were not aware of any intent to deport or
16   detain Plaintiff, it wanted an opportunity to file an updated declaration from a Government
17   representative who could testify on behalf of the agency and its intentions related to the
18   immigration status of Plaintiff, and who could therefore bind the Government accordingly. The
19   Court granted Defendants leave to file an updated declaration in support of its opposition and
20   extended the terms of the TRO pending the supplemental briefing.

21   On October 1, 2025, the Court held a hearing regarding Plaintiff's request to convert the
22   TRO into a preliminary injunction. During the hearing, Defense counsel requested to stay all
23   proceedings due to the Government shutdown, which the Court granted. On October 9, 2025,
24   Defense counsel informed Plaintiff that the Government was able to proceed pursuant to DOJ
25   guidance. The parties filed a stipulation to reset the hearing, which the Court held on October 22,
26   2025.

27   Plaintiff seeks a preliminary injunction to require the Government to provide meaningful
28   notice and the opportunity to present a fear-based claim before removing him to a third country

and to prevent his detention until after he receives notice and opportunity to contest his removal. The Government opposes Plaintiff's motion on jurisdictional grounds and argues that Enamorado is unlikely to succeed on the merits of his claims.

## II.  LEGAL STANDARD

A preliminary injunction is a matter of equitable discretion and "an extraordinary remedy never awarded as of right." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 25 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 20. Courts may still issue a preliminary injunction if a "plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits," if the balance of equities "tips sharply in the plaintiff's favor" and if the plaintiff establishes that they are likely to suffer irreparable harm and that an injunction is in the public interest. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). Where, as here, the Government is a party, the last two *Winter* factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (questions of whether the balance of equities tips in plaintiffs favor and whether injunction is in the public interest merge when the government is a party).

## III.  DISCUSSION

The Court first addresses two threshold arguments raised by Defendants, jurisdiction and the implications of *D.V.D. v. Department of Homeland Security*. The Court then turns to an overview of the applicable immigration statutory scheme before returning to the merits of the *Winter* factors.

### A.  Jurisdiction

First, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims because Enamorado is not currently in custody and therefore he does not have a cognizable habeas petition. The Court disagrees. The Supreme Court has "established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well

5

to attack future confinement and obtain future releases." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). Plaintiff has presented a valid habeas claim because he challenges his future confinement.[3]

Second, Defendants contend that Plaintiff's claim "seeking a stay of removal pending the completion of extra-statutory procedures to remove him is barred by 8 U.S.C. § 1252(g)." Opp'n at 11. Section 1252(g) of the Immigration and Nationality Act ("INA") provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."[4] 8 U.S.C. § 1252(g) (authority has been delegated from the Attorney General to the Secretary of Homeland Security). Defendants' argument is inapplicable to the facts of this case. Here, Plaintiff's claims do not arise from the Government's discretionary decision to execute his removal order, and Plaintiff does not challenge the removal order itself. Enamorado instead challenges his removal to a country other than Honduras without being provided with notice and an opportunity to present any defenses to removal to a third country.

Third, in the alternative, Defendants assert that "Sections 1252(a)(5) and 1252(b)(9) of the INA bar review in this Court," and the "sole" appropriate forum is a court of appeals.[5] Opp'n at

---

[3] Plaintiff notes that "[e]ven assuming *arguendo* that Habeas relief were improper, Mr. Enamorado's claims are properly before this court because he also pleaded federal question jurisdiction, 28 U.S.C. § 1331, over his request for injunctive and declaratory relief." Reply, 4, ECF No. 22. While the Court finds that Plaintiff presents a valid habeas claim, the Court also has federal question jurisdiction over Plaintiff's case.

[4] "Alien" is a term used in the INA, which was enacted in 1952; many cases that address immigration issues and the INA also use that word. The term is now widely considered derogatory because it pejoratively denies and dismisses the humanity of people, including children. As a result, current advocates and Government agencies often choose to use words such as immigrant or noncitizen instead. Here, the Court uses "alien" only when quoting the statute or caselaw. *See Arce v. United States*, 899 F.3d 796, 799 (9th Cir. 2018) ("Following the lead of the United States Supreme Court, we use the term 'noncitizen' throughout this opinion to refer to any person who is not a citizen or national of the United States." (cleaned up)).

[5] Section 1252(a)(5) states in relevant part: "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the *sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter*, except as provided in subsection (e)." 8 U.S.C. § 1252(a)(5) (emphasis added). Section 1252(b)(9) states in relevant

12. Sections 1252(a)(5) and (b)(9) provide that the "sole and exclusive means for judicial review of an order of removal" shall be by the appropriate court of appeals, and that such a petition shall be the sole avenue for "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions." § 1252(a)(5), (b)(9). Similar to Defendants' § 1252(g) argument, Defendants misconstrue Plaintiff's requested relief. Again, Enamorado does not challenge his final order of removal; he asks this Court to prevent his removal to a third country without notice and an opportunity to be heard. "While broad, the language of these sections was 'not intended to preclude habeas review over challenges to detention that are independent of challenges to removal orders,' and the Court finds they do not bar review here." *Ortega v. Kaiser et al.*, No. 25-cv-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) (quoting *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011)).

Finally, Defendants posit that Plaintiff's "claims run afoul of Section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA")," which is the statutory scheme for implementing the Convention Against Torture. Opp'n at 14. FARRA § 2242(d) provides that "no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252)." FARRA § 2242(d), codified at 8 U.S.C. § 1231 (note). Defendants' argument is again misplaced because Plaintiff is not challenging the "regulations adopted to implement" the Convention nor is he challenging his withholding of removal under the Convention. "FARRA, by its plain language, does not bar this Court's review of such claims." *Ortega*, 2025 WL 2243616 at *4. The Court is unpersuaded by Defendants' arguments and finds that the Court has subject matter jurisdiction over Enamorado's claims.

---

part: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added).

7

### B. Implications of *D.V.D. v. Department of Homeland Security*

Defendants ask the Court to exercise its discretion and dismiss Plaintiff's case because he is a member of the *D.V.D. v. U.S. Dep't of Homeland Sec.* certified class and therefore, Plaintiff's claims are subsumed in the class action. No. 25-cv-10676-BEM, 2025 WL 1142968, at *11 (D. Mass. Apr. 18, 2025); *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025) (staying preliminary injunction pending the appeal in the First Circuit). Plaintiff has requested immediate relief, while the *D.V.D.* case may take significantly longer to resolve. The Court agrees with Plaintiff that "Mr. Enamorado has no alternative pathway to seek the relief he requests while *D.V.D.* remains pending. . . . dismissal would leave Mr. Enamorado without effective access to judicial review and deprive him of the opportunity to vindicate his rights." Reply at 11. The Court denies Defendants' request in the interest of preserving Plaintiff's rights.

### C. Third Country Removal Procedures

The Court turns to the relevant statutory framework governing Plaintiff's claims. Section 1231(b)(2) of the INA sets out the procedure by which the Secretary of Homeland Security determines the country of deportation for a noncitizen who has received a final removal order. As the Supreme Court summarized, the Secretary of Homeland Security must follow "four consecutive removal commands" under § 1231(b)(2):

> (1) An alien shall be removed to the *country of his choice* (subparagraphs (A) to (C)), unless one of the conditions eliminating that command is satisfied;
>
> (2) otherwise he shall be removed to the *country of which he is a citizen* (subparagraph (D)), unless one of the conditions eliminating that command is satisfied;
>
> (3) otherwise he shall be removed to one of the *countries with which he has a lesser connection* (clauses (i) to (vi) of subparagraph (E)); or
>
> (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to "*another country whose government will accept the alien* into that country" (clause (vii) of subparagraph (E)).

*Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341-42 (2005) (emphasis and formatting added).

Starting with step one, a noncitizen shall be removed to the country of their choice and have an opportunity to designate a preferred country during final removal proceedings. § 1231(b)(2)(A). If a noncitizen does not designate a preferred country, they will be removed to

8

their country of citizenship under step two, or removed to a country with which they have a lesser connection under step three, unless they have been granted withholding of removal from that country. § 1231(b)(2)(D). Withholding of removal, governed by § 1231(b)(3), does not prevent a noncitizen from being removed from the United States, but prevents a noncitizen from being removed to a country where their "life or freedom would be threatened . . . because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." § 1231(b)(3)(A).

If the first three steps are unavailable, the noncitizen will be removed to "another country whose government will accept the alien into that country." § 1231(b)(2)(E)(vii). However, before being removed to "another country," the noncitizen "must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) and *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998)). "[L]ast minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016).

### 1. Detention Pending Removal

After a noncitizen receives a final removal order and there is no applicable judicial stay, the noncitizen may be detained pending removal pursuant to 8 U.S.C. § 1231(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197-98 (9th Cir. 2022). Section 1231(a) states that the Secretary of Homeland Security "shall remove the alien from the United States within a period of 90 days." § 1231(a)(1)(A). During the 90-day removal period, noncitizens may be detained. § 1231(a)(2).

Section 1231(a)(6) "authorizes further detention if the Government fails to remove the alien during those 90 days." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). This further detention statute is applicable to "certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or

9

unlikely to comply with the order of removal.'" *Id*. at 688.  However, the Supreme Court has held that detention can only be for "a period reasonably necessary to secure removal." *Id*. at 699.  Therefore, "if removal is not reasonably foreseeable," "continued detention [is] unreasonable and no longer authorized by statute." *Id*. at 699-700.

### D. Application of *Winter* Factors

#### 1. Plaintiff has Shown a Likelihood of Success on the Merits

Plaintiff alleges: (1) that the Fifth Amendment Due Process Clause and the INA require the Government to provide meaningful notice and the opportunity to present a fear-based claim before removing him to a third country; and (2) that the Fifth Amendment Due Process Clause and the INA prevent his detention until his removal is "reasonably foreseeable"—i.e., after he receives notice and opportunity to contest his removal.

##### a. Removal Claim

The Court finds that Plaintiff has demonstrated that there are serious questions going to the merits of his removal claim under the Due Process Clause and under the INA, and Enamorado has further established that he is likely to succeed on the merits.

The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law. U.S. Const. amend. V. "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Najjar*, 630 F. App'x 724 (citing *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012)) (holding that a "last minute order[] of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.").

The INA requires that Enamorado be provided with "sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden*, 409 F. Supp. 3d at 1009. During Plaintiff's removal proceedings, an immigration judge ordered Enamorado's removal to Honduras be withheld, and neither he nor the Government have since designated a country for his removal other than Honduras.  Consequently, there are no countries to which Enamorado "could currently be removed without his first being afforded notice and an opportunity to be heard on a

fear-based claim as to that country, as the Fifth Amendment Due Process Clause requires." *Ortega*, 2025 WL 2243616 at *5.

### b. Deportation Claim

The Court also finds there are serious questions as to the merits of Enamorado's claim that he may not be detained, without a pre-deprivation hearing before an immigration judge, until his removal is "reasonably foreseeable."

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "These protections 'appl[y] to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,' and to immigration detention as well as criminal detention." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (citing *Zadvydas*, 533 U.S. at 693).

The Court must determine what procedural process is due under *Mathews v. Eldrige*. 424 U.S. 319 (1976) (the Court must balance three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."). Numerous courts in this District have found that, in substantially similar cases, plaintiffs have satisfied the *Mathews* test, and people in Mr. Enamorado's circumstances have a protectable liberty interest in remaining out of custody on bond pending further immigration proceedings. *See Ortega v. Kaiser, et al.*, No. 25-cv-05259-JST, 2025 WL 2243616, at *6 (N.D. Cal. Aug. 6, 2025) (collecting cases); *Jorge Rivera Larios v. Sergio Albarran, et al.*, No. 25-cv-08799-AMO, 2025 WL 3043391, at *6 (N.D. Cal. Oct. 31, 2025).

This Court finds the reasoning in those cases to be persuasive and similarly concludes that Enamorado has satisfied the three *Mathews* factors and has shown that those factors support a pre-deprivation hearing before an immigration judge. First, Enamorado has a substantial private interest in remaining out of custody on bond to provide for his family and to maintain his

employment. Second, there is a high risk of erroneous deprivation of Enamorado's rights given the Government's statements that while the Government "do[es] not presently plan to detain Plaintiff or remove him from the United States . . . Respondents might change those plans at any time in accordance with applicable removal statutes." Gov. Supp. Brief at 1. Further, a pre-deprivation hearing would provide substantial safeguards to Plaintiff while not overly burdening the Government. *See Singh v. Andrews*, No. 25-cv-00801-KES, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (when "[a] petitioner has not received any bond or custody redetermination hearing," "the risk of an erroneous deprivation of liberty is high" because neither the government nor the petitioner has had an opportunity to determine whether there is any valid basis for the detention). Third, the Government has a low level of interest in detaining Plaintiff until his removal is "reasonably foreseeable" without a pre-deprivation hearing before an immigration judge because the Government has acknowledged in multiple hearings that Plaintiff is not a flight risk nor a danger to the community. *Pinchi v. Noem*, No. 25-cv-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) ("Civil immigration detention is permissible only to prevent flight or protect against danger to the community.").

Finally, § 1231(a)(6), the applicable removal provision for Mr. Enamorado, authorizes detention for only "a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S at 699. "Thus, if removal is not reasonably foreseeable . . . continued detention [is] unreasonable and no longer authorized by statute." *Id.* at 699-700. Currently, there is no country to which the Government could remove Enamorado without first providing him with an opportunity to present a fear-based claim as to that country. *See* § 1231(b)(2)(E)(vii). Enamorado argues, and the Government offered no evidence or argument to the contrary, that the process for designating a third country for his removal would take "at a minimum, a year to complete, and could take several years." Mot. at 17. There is no significant likelihood of Enamorado's removal in the reasonably foreseeable future, nor would detention be "reasonably necessary to secure" his removal when Enamorado has consistently been considered not to be a flight risk nor a danger to the community.

Enamorado has shown a likelihood of success on the merits of his claims that the Due Process Clause and the INA entitles him to notice and an opportunity to present a fear-based claim before being removed to a third country and to a hearing before an immigration judge prior to any detention.

### 2. Plaintiff has Demonstrated that He is Likely to Suffer Irreparable Harm without Preliminary Relief

Enamorado is likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief because he faces the risk of removal to a third country without an opportunity to present a fear-based claim and the risk of re-detention by ICE, which would be in violation of his procedural due process rights. As noted above, the Government made no assurances in their briefing that the Government's intentions would not change, and that ICE would not re-detain Plaintiff soon or after his scheduled May 2026 "interview." "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Moreover, detention and removal would impose severe emotional and financial burdens on Plaintiff and his family, including his minor children.

### 3. Balance of Equities Tips in Plaintiff's Favor and an Injunction is in the Public Interest

The Court finds that the balance of equities tips in Plaintiff's favor, and a preliminary injunction is in the public interest. The third and fourth *Winter* factors, balance of equities and public interest, merge given that the Government is a party.

Here, the potential harm to Enamorado is significant, while the Government's potential harm is minimal. Enamorado faces the most serious harm – the loss of liberty. Detention not only deprives a person of physical freedom, but it isolates a person from family, community, and employment, often causing severe, enduring psychological trauma. The Government risks only a delay in detaining Enamorado. The Government has confirmed that they do not consider Enamorado to be a flight risk nor a danger to the community. In the context of immigration detention, "the government has no legitimate interest in detaining individuals who have been

13

determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. At the same time, there is a strong public interest in protecting individuals from unlawful detention. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (finding that all citizens have a stake in upholding the Constitution, and therefore public interest concerns are implicated when a constitutional right has been violated). "Faced with a choice 'between minimally costly procedures and preventable human suffering,' . . . the Court concludes 'that the balance of hardships tips decidedly in petitioner's favor.'" *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (simplified).

The balance of equities and public interest favors maintaining the status quo, requiring the Government to provide Enamorado with notice and an opportunity to present a fear-based claim, and enjoining the Government from detaining Enamorado without a pre-deprivation hearing before an immigration judge.

### 4. Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). The Court finds that no security bond is required, as the Government provides no evidence of costs it will incur due to Plaintiff's continued release. *Pinchi*, 2025 WL 2084921 at *4.

## IV. CONCLUSION

The Court GRANTS Plaintiff's request for a preliminary injunction. The Government is enjoined and restrained from (1) removing Plaintiff from the United States without notice and an opportunity to present a fear-based claim; and (2) re-detaining Plaintiff without a pre-deprivation

hearing before an immigration judge.  This Order shall remain in effect until further order of the Court.

The parties shall immediately inform the Court, within three court days, if there are any changes to Plaintiff's immigration status or upcoming immigration proceedings.

**IT IS SO ORDERED.**

Dated: November 3, 2025

Noël Wise
United States District Judge